IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:  0:20-cv-60520-RAR

SERENDIPITY AT SEA, LLC,

    Plaintiff,

vs.

UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO POLICY
NUMBER 187581 and

USI INSURANCE SERVICES, LLC,

    Defendants.
_____/

**UNDERWRITERS RESPONSE IN OPPOSITION TO PLAINTIFF SERENDIPITY AT SEA, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT [DE 81] WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NUMBER 187581 (hereinafter "UNDERWRITERS"), by and through its undersigned counsel, hereby makes and serves this its Opposition to Plaintiff, SERENDIPITY AT SEA, LLC's, (hereinafter "Plaintiff") Cross Motion for Summary Judgement [DE 81] as follows:

**I.    Plaintiff's Motion Must Be Denied for Failure to Comply with Southern District Local Rule 56.1**

Plaintiff has been previously admonished by this Court for failure to plead in compliance with the Rules of Civil Procedure.  This Court dismissed Plaintiff's 3rd Amended Complaint, on the Defendants' Joint Motion, as a "shotgun pleading" and for failure to comply with "relevant pleading standards" [DE 63].  A review of Plaintiff's Summary Judgment Motion [DE 81] and its accompanying Statement of "Additional Undisputed Material Facts" [DE 80], shows that Plaintiff did not make any attempt to comply with the procedures required by Local Rule 56.1.

This failure to comply with the Local Rule will unduly burden this Court and has made responding to Plaintiff's Motion more difficult and time consuming for the UNDERWRITERS.

As noted by UNDERWRITERS in its Response to Plaintiff's "Additional Undisputed Material Facts", the Plaintiff failed to comply with Local Rule 56.1(b)(1)(A) as to length (28 pages versus the 15 page maximum); Plaintiff failed to comply with the numbering scheme requirements in Local Rule 56.1(b)(2)(D); and Plaintiff generally did not support its alleged facts with citations to record evidence as required by Local Rule 56.1(b)(1)(B). [See DE 84, fn 1].

Plaintiff's pattern of non-compliance with the Rules continued in its Cross-Motion for Summary Judgement.  Plaintiff did not cite once to its "Additional Undisputed Material Facts" and wholly ignored UNDERWRITERS Material Facts in its briefing.   Plaintiff further fails to advise the Court and UNDERWRITERS of its basis for claiming that there does not exist a genuine issue of material fact to be tried.   Plaintiff's Cross-Motion for Summary Judgment is not a proper Motion for Summary Judgment, as it is replete with unsubstantiated attorney argument and has almost no citations to record evidence.   It further presents alleged facts in a manner that would not be admissible at trial, an example being the multiple citations to a composite of news articles on Hurricane Dorian [DE 81-9] that have not been authenticated by a witness.   Similarly, Plaintiff cites to photographs [DE 81-15], but provides no witness testimony to authenticate the photographs or explain them in the context of the Motion.   Non-evidentiary attorney argument is used to explain the purpose of the photographs.   This is not permitted in summary judgment practice.

Plaintiff's failure to comply with Local Rule 56.1 warrants outright denial of Plaintiff's Motion for Summary Judgment.   This is a reasonable an appropriate remedy for Plaintiff's continued pattern of non-compliance with the rules of court in this litigation.  This is especially

true considering Plaintiff was admonished by the Court in the context of dismissing the 3rd Amended Complaint. A party's failure to comply with the rules and standards of practice governing summary judgment practice is an independent reason for denial of the Motion. *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*, No. 11-61577-CIV, 2012 U.S. Dist. LEXIS 93461, at *5-8 (S.D. Fla. July 6, 2012).

## II. PLAINTIFF CONCEDES THAT IT WAS IN BREACH OF THE CAPTAIN WARRANTY REQUIRING DENIAL OF THE CROSS-MOTION FOR SUMMARY JUDGMENT AND GRANTING UNDERWRITERS' MOTION FOR FINAL SUMMARY JUDGMENT [DE 75]

UNDERWRITERS would incorporate by reference its legal argument on this issue from DE 75, specifically pages 2-5, 10-18. Plaintiff has failed to meet its burden with regard to the Cross-Motion for Summary Judgment as it has conceded it was in breach of the Captain Warranty, which was a valid basis for UNDERWRITERS to deny coverage for this loss. Plaintiff's Cross-Motion for Summary Judgment must be denied. Further, UNDERWRITERS' Motion for Final Summary Judgment must be granted as there is no genuine issue for trial, based on the following undisputed facts.

In responding to UNDERWRITERS' Statement of Material Facts, Plaintiff conceded the following material facts, that are central to the breach of the Captain Warranty and require Summary Judgment in UNDERWRITERS' favor:

- Plaintiff's application for insurance indicated that it had an employed, a paid, full time, Captain [DE 80, p. 5, ¶ 11 – Undisputed].

- Mr. Oakley signed the application on behalf of the Plaintiff. [DE 80, p. 5, ¶ 12 – Undisputed].

- Based on underwriting guidelines, Plaintiff qualified for and was provided financial discounts, due to Plaintiff's employment of a full time, licensed captain. [DE 80, p. 7, ¶ 17 – Undisputed].

- The premium credit was approximately $1,000.00 per year, which is a 20% reduction based on the 2015 quoted rate. This reduced the annual premium in from $5,971.00 to $4,971.00 in the 2015 to 2016 policy year. [DE 80, p. 8, ¶ 19 – Undisputed].

- In consideration for these discounts, the quote included an express Captain Warranty to ensure that Plaintiff employed (and continued to employ) a full time, licensed captain for the maintenance and care of the Subject Vessel. [DE 80, p. 8, ¶ 20 – Deemed admitted for failure to controvert with record evidence].

- The Policy quote dated June 9, 2015, referenced the Captain Warranty in the "Endorsements & Warranties" section and provided the full text of the Captain Warranty as a separate document. [DE 80, p. 9, ¶ 21 – Undisputed].

- The quote also required, the Captain's resume, for review and approval by Underwriting. [DE 80, p. 9, ¶ 22 – Undisputed].

- Mr. Oakley admitted that the 2015 quote for the Policy, with the Captain Warranty, was reviewed and approved by the Plaintiff. [DE 80, p. 9, ¶ 24 – Deemed admitted for failure to controvert with record evidence].

- Plaintiff's insurance broker submitted Captain Scott Connelly's license which was reviewed by underwriting and determined to be sufficient to qualify as the Subject Vessel's employed licensed captain. [DE 80, p. 11, ¶ 30 and 31 – Undisputed].

- If Plaintiff had failed to submit Captain Connelly's license and qualifications for approval by underwriting, the Policy would have been voided. [DE 80, p. 12, ¶ 32 – Deemed admitted for failure to controvert with record evidence].

- Oakley's status as an operator, did not qualify him as the Subject Vessel's employed full time, captain for purposes of satisfying the Captain Warranty. [DE 80, p. 12, ¶ 34 – Undisputed].

- At each annual renewal of the Subject Vessel's insurance, including the 2019-2020 renewal, the Plaintiff received a renewal quote which included the text of the Captain Warranty. [DE 80, p. 12, ¶ 35 – Undisputed].

- Between 2015 and the date the Subject Vessel was damaged by Hurricane Dorian, Plaintiff did not request to have the Captain's Warranty removed from the Policy. [DE 80, p. 13, ¶ 38 – Deemed admitted for failure to controvert with record evidence].

- The Plaintiff was aware of the Captain's Warranty and knew that it was applicable to each policy year. [DE 80, p. 13, ¶ 39 – Deemed admitted for failure to controvert with record evidence].

- Captain Connelly was never employed by the Plaintiff as the full time, licensed captain for the maintenance and care of the Subject Vessel. [DE 80, p. 16, ¶ 47 – Deemed admitted for failure to controvert with record evidence].

- Plaintiff breached the Policy's express Captain's Warranty by failing to employ a full time, licensed captain for the maintenance and care of the vessel during the Policy year starting on June 10, 2019. [DE 80, p. 17, ¶ 52 – Deemed admitted for failure to controvert with record evidence].

Plaintiff's admitted breach of the Captain Warranty precludes coverage under the policy. Summary Judgement must be granted in UNDERWRITERS' favor on Count One of the 4th Amended Complaint, because the Policy was voided by Plaintiff's breach of the Captain's Warranty.

### III. THE CAPTAIN WARRANTY IS CLEAR AND UNAMBIGUOUS REQUIRING ENFORCEMENT AND GRANTING UNDERWRITERS' MOTION FOR FINAL SUMMARY JUDGMENT [DE 75]

In a feeble attempt to avoid the consequences of admittedly breaching the policy's Captain Warranty, Plaintiff now claims that the Captain Warranty was somehow ambiguous. This is belied by the fact that Plaintiff reviewed the warranty when the policy was originally quoted in 2015, approved it and accepted the policy subject to the Captain Warranty [DE 80, p. 9, ¶ 21, 22 and 24]. Plaintiff further never requested that UNDERWRITERS remove the Captain Warranty from the policy, over a period of 5 years. [DE 80, p. 12-13, ¶ 35, 36, 38 and 39]. There is further no record evidence that Plaintiff ever asked its broker Co-Defendant USI, to clarify these alleged ambiguities. In fact, Plaintiff now claims that Defendant USI, failed to explain the Captain Warranty, causing the Plaintiff to breach it [DE 78, p. 35-35, (Plaintiff claims that USI breached its duty to explain the terms of the policy, including the Captain Warranty)].

As a threshold issue, Plaintiff cites to the Captain Warranty that was included in the 2015 Quote in its Cross-Motion for Summary Judgment.   Review of DE 81-1, shows that this is the Captain Warranty from the July 9, 2015 Quote, which states at the top "VALID FOR 30 DAYS" and "Policy Term: TBD".  [DE 70-1, p. 10 of 28, Ex "B"].   This document was part of the 2015 quote package, but is not the Captain Warranty that was in force at the time of the 2019 hurricane loss.  The Captain Warranty in force at the time of the loss, did not include the reference to Mr. Oakley being permitted "to operate the vessel without the Captain aboard."  The actual Captain Warranty from the 2019-2020 policy year appears in the record at DE 70-2, Ex. "E" p. 68, Bates # USI 000883.  For ease of reference, it appears as follows:



**SEAWAVE YACHT INSURANCE**

**CERTIFICATE SCHEDULE**

This is to certify that in accordance with the authorisation granted under Contract No: LH1830414 Certificate No: 187581 to the undersigned detailed below and in consideration of the premium specified herein an insurance has been effected in accordance with the Terms and Conditions herein or endorsed.

Participating Underwriters hereon: 100% UNDERWRITTEN BY CERTAIN UNDERWRITERS AT LLOYDS OF LONDON

**Capt. Warranty (FT Lic. M&C)**

**INSURED:** Serendipity at Sea, LLC
**Loss Payee:**
**Policy Term:** 10 June 2019 12:01 AM To 10 June 2020 12:01 AM Local Standard Time

**Upon the Vessel:**

| Name: | SERENDIPITY | Year: | 2004 | Length: 61' |
|---|---|---|---|---|
| Manufacturer: | Viking | Model: | Motor Yacht | |
| Primary Homeport: | Cape Marina Cape Canaveral Florida, 32920 USA | Serial #: | VSC61081H304 | |

**Effective Date of Endorsement:**                                                  10 June 2019

**Amendment(s) to Policy:**

Warranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway.

All other terms, clauses and conditions remain unchanged.

**Premium Change:**   Nil

Issued in Ft Lauderdale, Florida on 14th June 2019 for and on Behalf of: Atlass Special Risks, Inc.

_R. Smitz_
Richard Smith
Vice President

There is nothing ambiguous about the Captain Warranty, which requires Plaintiff to warrant, that "a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway." In the absence of some contrary indication, words are given their plain, ordinary and everyday meaning as understood by a reasonable person. *F.W.F. Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007). It is important to note that an ambiguity is not created because one of the parties disputes it proper interpretation. *Id.* at 1357. That is exactly what Plaintiff is attempting to try and avoid the consequence of breaching the Captain Warranty. On page 8 of Plaintiff's Motion, counsel includes a rambling list of his thoughts as to why the warranty is ambiguous. None of these are supported by citations to the Plaintiff's testimony or other record evidence and should be ignored by the Court. The operative words in the warranty are as follows:

"Full time", "licensed", "captain", "employed" "for the maintenance and care of the vessel". The plain language meanings of these words are as follows:

- "full time" - occupying or using the whole of the usual working day or week.[1]
- "licensed" - having an official license.[2]
- "captain" - the person in command of a ship.[3]
- "employed" – person having a paid job[4]
- "maintenance" - the process of maintaining or preserving someone or something, or the state of being maintained.[5]

---

[1] Oxford English Dictionary online accessed on 01/04/21.
[2] Oxford English Dictionary online accessed on 01/04/21.
[3] Oxford English Dictionary online accessed on 01/04/21.
[4] Oxford English Dictionary online accessed on 01/04/21.
[5] Oxford English Dictionary online accessed on 01/04/21.

- "care" - the provision of what is necessary for the health, welfare, maintenance, and protection of someone or something; serious attention or consideration applied to doing something correctly or to avoid damage or risk.[6]

Reviewing these widely accepted definitions against Plaintiff's own description of Captain Connelly's involvement with M/Y SERENDIPITY, demonstrates conclusively that Plaintiff's imaginary, Captain Connelly, does not meet the policy's requirements for a full time Captain. To review Connelly was:

- Never aboard the Subject Vessel in the Bahamas in 2019 [DE 80, p.15 ¶ 46].
- Never employed by the Plaintiff as the full time, licensed captain for the maintenance and care of the Subject Vessel [DE 80, p.16 ¶ 47].
- A friend of the owner that was paid nothing during calendar year 2019 [DE 80, p. 16 ¶ 48].
- Described as retired [DE 80, p. 17 ¶ 50].
- The "Plaintiff's backup and/or assistant captain as needed." [DE 81, p. 10-11].

UNDERWRITERS do not dispute that Mr. Oakley was approved as an operator of the Subject Vessel as described in the 2015 quote, however his status as an operator did not qualify him to replace the employed captain required by the Captain Warranty [DE 80, p. 12 ¶ 34]. In any event, this claim was denied by UNDERWRITERS, for the sole reason that Plaintiff never complied with the Captain Warranty required by the policy. Any alleged confusion over who had to be aboard the vessel while it was underway, is irrelevant to this claim as M/Y SERENDIPITY was tied to the dock in the Bahamas when she was destroyed by Hurricane Dorian [DE 80, p. 17 ¶ 53].

---

[6] Oxford English Dictionary online accessed on 01/04/21.

## IV. PLAINTIFF IGNORES THE *OCEAN REEF* PRECEDENT IN ITS CROSS MOTION FOR SUMMARY JUDGEMENT

It is curious that Plaintiff's Cross-Motion for Summary Judgment ignores this Court's prior ruling in *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 396 F. Supp. 3d 1170, 1176 (S.D. Fla. 2019). As briefed in UNDERWRITERS' Motion for Final Summary Judgement, the *Ocean Reef* case requires that this Policy's Captain Warranty be strictly construed and mandates that Plaintiff's policy be voided for breach of that warranty. [DE 75, p. 6-10].

## V. PLAINTIFF WAS IN BREACH OF ITS HURRICANE PLAN WHEN HURRICANE DORIAN IMPACTED THE BAHAMAS

Plaintiff seeks a ruling from this Court, as a matter of law, that it did not breach the policy's hurricane plan. Plaintiff fails to carry its burden on this issue and as such this portion of the Cross-Motion for Summary Judgment must be denied. In fact, the Court could find as a matter of law for UNDERWRITERS on this issue, noting that it is undisputed that Plaintiff was in breach of multiple obligations under the policy's hurricane plan.

Plaintiff takes the position that the information provided in the hurricane plan constitutes a representation to UNDERWRITERS and not a warranty. Plaintiff further states that "there is only an obligation that the statements were true and misleading at the time they were made." [DE 81, p. 12]. Assuming for purposes of argument, that Plaintiff is correct on this point of law, statements made in the subject hurricane plan were untrue and misleading at the time they were made. In response to question 3, Ms. English indicated that she and Mr. Oakley would visit the vessel "1 time per week" as part of their hurricane plan [DE 80-13, #3]. It is undisputed, that Plaintiff left M/Y SERENDIPITY in the Bahamas for approximately 3 weeks prior to its destruction, without Mr. Oakley or Ms. English visiting the vessel [DE 80, p. 19, ¶ 56]. In

response to question 4, Plaintiff indicated that Captain Scott Connelly was the only person, other than the Plaintiff, that had "the authority to move and or prepare the vessel for a storm" [DE 80-13, #4].  It is undisputed that Mr. Oakley, Ms. English and Captain Connelly did not personally prepare the vessel for hurricane Dorian.  The vessel was prepared by "local Bahamian captains" who had not been approved on the policy [DE 80, p. 21, ¶ 61, 62].  In response to question 16, Plaintiff indicated that in the event of a named storm either their Boat Captain [Scott Connelly], Mr. Oakley or Ms. English would "move [the vessel] and put all loose articles away and tie down the bimini. [DE 80-13, #16]"  Again, it is undisputed that these three individuals, Connelly, Oakley and English, had no role in preparing the vessel for hurricane Dorian [DE 80, p. 21, ¶ 61, 62].   These three statements constitute misrepresentations to UNDERWRITERS, regarding execution of the hurricane plan.   On the date the hurricane plan was signed, June 9, 2019, Mr. Oakley had already planned this trip to the Bahamas and knew that Captain Connelly would not be with the vessel [DE 80, p. 14, ¶ 40].  He also knew that the vessel would be left unattended at Pink Paradise from July 27 until late August when he and Ms. English planned to return and use the vessel [DE 80, p. 19, ¶ 56].

At the time of the 2019, renewal application, the Subject Vessel's home port was reported as Cape Marina in Cape Canaveral, Florida. This location was used for rating and underwriting purposes [DE 82, ¶ 37].  The Plaintiff did not disclose that the Subject Vessel would be re-located to the Abacos in the Bahamas and docked behind a private residence from July to October of 2019 [DE 82, ¶ 38].  This change in mooring location, substantially increased the risk to the Subject Vessel during the hurricane season. Had it been disclosed by Plaintiff, underwriters may have declined the risk or would have proposed new terms including additional premium, an increased Named Windstorm Deductible and a revised hurricane plan [DE 82, ¶

59]. This testimony by the underwriter, John Hewlett shows why the Plaintiff's false representations in the hurricane plan and subsequent breaches were material to the underwriting of this risk.

With regard to the movement of the subject vessel out of the Bahamas and back to Cape Marina in advance of hurricane Dorian, Plaintiff relies on the unsubstantiated argument of counsel regarding the available weather forecasts and other data [DE 81, p. 14].  This information should not be considered by the Court as it is not based on record evidence.  The testimony of Underwriters expert meteorologist, Dr. Dooley is undisputed in the record.  He found that a weather window existed between August 24 and the morning of August 30, in which the vessel could have been safely evacuated from the Bahamas to Cape Marina, thereby saving the vessel from destruction [DE 76, ¶ 63 and Ex "3" Dooley SeaWeather Expert Rpt. p. 39, bullet 2].

Further, the testimony of Captain Thomas Danti, UNDERWRITERS' expert captain is undisputed in the record.  He opined that based on the forecast information obtained by Dooley SeaWeather, there is no question that a licensed Captain assigned to M/Y Serendipity would have made the decision to evacuate himself or herself and M/Y Serendipity from the Bahamas in the advance of Hurricane Dorian's arrival [DE 76, ¶ 66 and Ex "4" Danti Expert Rpt. p. 5, ¶ 3].

It is clear that Plaintiff has not met it burden for summary judgment as to the breach of the hurricane plan as a basis for denial of the claim.   The Court could certainly find as a matter of law that Plaintiff breached the plan or reserve this as a factual question in the event this matter proceeds to trial.

## VI. PLAINTIFF MISREPRESENTED MATERIAL FACTS IN THE JUNE 9, 2019 RENEWAL APPLICATION

Plaintiff seeks a ruling from this Court, as a matter of law, that it did not make a material misrepresentation on the June 9, 2019, renewal application [DE 82, p. 76]. Plaintiff fails to carry its burden on this issue and as such this portion of the Cross-Motion for Summary Judgment must be denied. It is UNDERWRITERS position that the 2019 renewal application, as well as the 2016, 2017 and 2018, renewal applications, presented an opportunity for Plaintiff to disclose that it was no longer in compliance with the Captain Warranty [DE 82, ¶ 36, 37 and 38]. Question number 2 regarding crew changes or Question number 6 regarding changes to coverage, terms or conditions should have prompted Plaintiff to disclose that it did not employ Captain Connelly as its full time licensed captain for the maintenance and care of the vessel.

It is undisputed that Plaintiff's employment of a full time licensed captain for this vessel was material to the rating and grading process for the quote that lead to this insurance policy [DE 82, ¶ 14]. The employment of a full time licensed captain resulted in substantial discounts for the Plaintiff in terms of the premium and deductible in each policy year [DE 82, ¶ 19]. If Plaintiff had not submitted Captain Connelly's license and qualifications for review in 2015, the policy would have been voided. [DE 82, ¶ 32]. The misrepresentations of the Plaintiff on the 2019 and other policy year renewal applications were certainly material to this risk.

It is clear that Plaintiff has not met it burden for summary judgment as to the renewal application misrepresentations as a basis for denial of the claim. The Court could certainly find as a matter of law that Plaintiff misrepresented material information on the application or reserve this as a factual question in the event this matter proceeds to trial.

## VII.     PLAINTIFF'S BREACHES INCREASED THE HAZARD TO THE SUBJECT VESSEL AND ALL WERE IN THE CONTROL OF THE INSURED

Plaintiff seeks a ruling from this Court, as a matter of law, that it did not increase the hazard to the Subject Vessel through its breaches that are central to this case. Plaintiff is admitting the breaches, but claiming there was no prejudice to UNDERWRITERS. Plaintiff fails to carry its burden on this issue and as such this portion of the Cross-Motion for Summary Judgment must be denied. Each of Plaintiff's breaches increased the hazard with regard to the Subject Vessel.

While it is UNDERWRITERS position that Plaintiff's breach of the Captain Warranty voids coverage under maritime law, assuming, for purposes or argument, that Florida law applies, coverage is also precluded. Under Florida law, the breach of a warranty that "increased the hazard" that caused the loss precludes coverage. *Great Lakes Reinsurance (UK) v. Rosin*, 757 F. Supp. 2d 1244, 1259 (S.D. Fla. 2010). The record evidence is undisputed that Plaintiff's failure to employ a full time licensed captain for the maintenance and care of the vessel, increased the hazard. Captain Danti's unrebutted opinion on this issue states:

> *Mr. Oakley admitted that they did not employ a full time licensed captain for the maintenance and care of the vessel and to be aboard while underway. This contributed to the loss of the vessel.*
>
> *a. With proper planning that would have been performed by a full time licensed captain, it is most likely that "Serendipity" would have been moved back to Cape Marina for protection from Hurricane Dorian.*
>
> *b. "Serendipity" did not have the benefit of an experienced of a full-time captain onboard to track the approach of hurricane Dorian, keep the vessel ready and evacuate the vessel from the Bahamas in advance of the hurricane.*
>
> *c. AIS data confirms that many other vessels made the decision to evacuate the Bahamas based on the same forecast information available to owner of "Serendipity".*

[DE 76-4, p. 9, ¶ A].

Captain Danti also opined that Plaintiff's failure to follow its hurricane plan, increased the hazard to the subject vessel. His unrebutted opinion regarding the hurricane plan is as follows:

> B. The "Serendipity" was not in compliance with her hurricane plan as she was left in the Bahamas, which was not an option under the plan. This contributed to the loss of the vessel.
>
> a. There was no evidence chafing gear was used to protect the lines from parting.
>
> b. The lead on the lines was not long enough to allow for a 20 foot storm surge.
>
> c. The vessel was not hauled out, which was the alternative hurricane plan.
>
> d. Owner of "Serendipity" did not appear to understand the importance of a hurricane plan with regard to its vessel.
>
> e. Cape Marina offered better protection from a hurricane than the dock behind Pink Paradise in Treasure Cay.

[DE 76-4, p. 9, ¶ B].

Pursuant to Florida law, Plaintiff's breach of the Captain Warranty and hurricane plan increased the hazard of failing to be prepared for a hurricane, by evacuating the subject vessel back to its home port in Florida, which was the precise cause of the damage to the vessel. With regard to the misrepresentations, regarding not employing the required Captain, the misrepresentations themselves were designed to induce UNDERWRITERS to continue insuring the vessel without knowledge of how the Plaintiff increased the hazard to the vessel through its non-compliance with the Captain Warranty and hurricane plan. UNDERWRITERS would submit that the Court could certainly find as a matter of law that Plaintiff's breaches increased the hazard as required by Florida Statute 627.409(2).

WHEREFORE, Defendant UNDERWRITERS seek an Order of this Honorable Court denying Plaintiff's Cross-Motion for Summary Judgment and for and Order granting UNDERWRITERS' Motion for Final Summary Judgment against Plaintiff [DE 75] as well as for all further relief this Court deems just and proper.

Respectfully Submitted,

/s Andrew N. Mescolotto
ANDREW N. MESCOLOTTO (28141)
FERTIG AND GRAMLING
200 Southeast 13th Street
Fort Lauderdale, FL 33316
PH:  (954) 763-5020
FX:  (954) 763-5412
anm@fertig.com
Attorneys for Underwriters

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on January 4, 2021 on all counsel or parties of record on the Service List below.

Respectfully Submitted,

By:  /s Andrew N. Mescolotto
ANDREW N. MESCOLOTTO (28141)
FERTIG AND GRAMLING
200 Southeast 13th Street
Fort Lauderdale, FL 33316
PH:  (954) 763-5020
FX:  (954) 763-5412
anm@fertig.com
Attorneys for the Underwriters

**SERVICE LIST**

| | |
|---|---|
| Ronald J. Anania<br>Law Offices of Ronald J. Anania, P.A.<br>10910 SW 10th Court<br>Davie, FL 33324<br>PH: (954) 448-1872<br>ananialawfirm@gmail.com<br>*Attorney for Plaintiff*<br>*VIA CM/ECF* | ANDREW N. MESCOLOTTO (28141)<br>FERTIG AND GRAMLING<br>200 Southeast 13th Street<br>Fort Lauderdale, FL 33316<br>PH: (954) 763-5020<br>FX: (954) 763-5412<br>anm@fertig.com<br>*Attorneys for Underwriters*<br>*VIA CM/ECF* |
| | Juan C. Martinez (009024)<br>GRAYROBINSON, P.A.<br>333 S.E. 2nd Ave., Suite 3200<br>Miami, FL 33131<br>PH: 305-416-6880<br>FX: 305-416-6887<br>Juan.martinez@gray-robinson.com<br>ecianella@gray-robinson.com<br>*Attorney for USI Insurance*<br>*Via CM/ECF* |