# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-60520-RUIZ/STRAUSS

**SERENDIPITY AT SEA, LLC,**

     Plaintiff,

v.

**UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO POLICY
NUMBER 187581, *et al.*,**

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court upon Defendant Underwriters at Lloyd's Motion for Final Summary Judgment as to Count I of Plaintiff's 4th Amended Complaint [DE 75] ("Insurer's Motion") and Plaintiff's Cross-Motion for Summary Judgment Against Defendant Underwriters at Lloyd's of London Subscribing to Policy Number 187581 [DE 81] ("Plaintiff's Motion"). The motions were referred to me to take all action as required by law [DE 98]. I have reviewed the motions, the materials filed in connection with the motions,[1] and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that both motions [DE 75, DE 81] be **DENIED**.

## BACKGROUND

Plaintiff owns a 61-foot yacht, M/Y Serendipity ("Vessel"), that was damaged on August 30, 2019 by Hurricane Dorian, while docked in the Bahamas. Defendant, Underwriters at Lloyd's Statement of Material Facts ("Insurer Stmt.") [DE 76] ¶ 1 (undisputed), ¶ 53 (undisputed);

---

[1] This includes docket entries 76, 80, 82, 84, 90, 93, and 97.

Plaintiff's Statement of Facts [DE 80] at p. 26 ¶ 1 (undisputed).  Shortly thereafter, Plaintiff filed

an insurance claim, which was subsequently denied.  *See* Plaintiffs' Fourth Amended Complaint

[DE 65] ¶¶ 17-18; Defendant Underwriters' Answer [DE 71] ¶¶ 17-18.  Consequently, Plaintiff

commenced this action against Defendant Underwriters at Lloyd's of London Subscribing to

Policy Number 187581 ("Insurer") asserting, *inter alia*, that Insurer breached the subject insurance

policy ("Subject Policy").[2]  The operative complaint, Plaintiff's Fourth Amended Complaint [DE

65], contains a single breach of contract claim against Insurer and two other claims against an

insurance broker.[3]

Insurer contends that it did not breach the Subject Policy because it properly denied

Plaintiff's insurance claim for three separate reasons: (1) Plaintiff breached a Captain Warranty;

(2) Plaintiff breached a hurricane plan; and (3) Plaintiff misrepresented information in its insurance

application.  Deposition of Underwriters at Lloyd's of London ("Insurer Depo.") [DE 70-6] at p.

12.[4]  *See also* Plaintiff's Motion at p. 5.  In its motion, Insurer seeks summary judgment on the

basis that it properly denied Plaintiff's insurance claim (and thus did not breach the Subject Policy)

because of Plaintiff's alleged breach of the Captain Warranty.  Although Insurer does not put forth

the second and third reasons Insurer provided for denial of Plaintiff's claim as grounds for granting

Insurer's Motion, Insurer nevertheless maintains, in its response to Plaintiff's Motion, that those

bases independently permitted denial of Plaintiff's claim.  *See* [DE 90] at pp. 9-12.  Plaintiff argues,

---

[2] The Vessel was damaged during the term of the Subject Policy (June 10, 2019 through June 10, 2020).  Insurer Stmt. ¶ 1 (undisputed).

[3] The claims against the insurance broker are the subject of other pending motions for summary judgment that will be addressed separately.  This Report only addresses the breach of contract claim against Insurer (Count I).

[4] Garyfallia Konstantopoulou appeared as Insurer's Rule 30(b)(6) representative (regarding certain deposition topics).  *See* Insurer Depo. at p. 5.

in its motion, that all three stated grounds for denial of the claim were improper (which Plaintiff must show to prevail on its breach of contract claim against Insurer).

The Captain Warranty under the Subject Policy provides as follows: "Warranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway." [DE 71-4] at p. 7. The Subject Policy went into effect following Plaintiff's renewal of its annual insurance policy in 2019, a policy that was initially issued in 2015. *See* Insurer Stmt. ¶ 6 (undisputed). Each annual policy also included the Captain Warranty. *Id.* However, in addition to containing the Captain Warranty language that is included in the Subject Policy, the Captain Warranty in the initial 2015 policy (unlike the Captain Warranty in the Subject Policy) also provided that "Michael Sean Oakley is permitted to operate the vessel without the Captain aboard." [DE 82] at p. 14. Mr. Oakley and his wife are the managers of Plaintiff. Insurer Stmt. ¶¶ 3-4. Although the Subject Policy does not specifically provide that Mr. Oakley may operate the Vessel without the captain aboard, Insurer does not dispute that Mr. Oakley was permitted to operate the Vessel as stated in the 2015 policy (without the captain aboard). [DE 90] at p. 8. However, Insurer maintains that Plaintiff was still required to employ a full-time licensed captain but did not do so. *Id.*

That captain was understood to be William Scott Connelly, who was listed as the captain on Plaintiff's 2015 insurance application. *See* Insurer Stmt. ¶ 11 (undisputed); [DE 82] at pp. 7-8. In fact, when Plaintiff initially sought coverage for the Vessel in 2015, the quote required Plaintiff to submit the captain's resume for review and approval. Insurer Stmt. ¶ 22 (undisputed). Plaintiff also submitted Captain Connelly's license, and underwriting determined that Captain Connelly qualified to be the Vessel's employed licensed captain after reviewing his license, training, and

experience.  *Id.* ¶¶ 29-31 (undisputed).  Nonetheless, as discussed below, the undisputed facts demonstrate that Captain Connelly was not employed as a full-time captain for the Vessel.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case."  *Id.* (citing *Celotex*, 477 U.S. at 322-23).  *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)).  Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists.  *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

### I.    CHOICE OF LAW

The parties' cross-motions for summary judgment each adopt different positions as to whether maritime law or state law applies to the Policy, without addressing why the other does not apply. Specifically, Insurer's Motion applies maritime law, while Plaintiff's Motion applies Florida law. In this regard, Plaintiff is correct in light of the applicable choice-of-law provision in the Policy. *See* [DE 71-4] at p. 6 ("This insurance shall be governed by and constructed in accordance with the laws of the State of Florida . . . ."). A "choice of law provision in a maritime insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010) (quoting *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585

5

F.3d 236, 242 (5th Cir. 2009)).  *See also GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1143 (11th Cir. 2019) ("The parties could have included a choice-of-law provision selecting state law over federal law  . . . .").  Here, Insurer does not contend that the choice-of-law provision is unreasonable, unjust, or otherwise unenforceable.  Therefore, Florida law applies.

## II.        BREACH OF CONTRACT (COUNT I)

The issue here is whether Insurer breached the Subject Policy, which turns on whether any of its reasons for denying Plaintiff's claim were permissible.  For Insurer to prevail (at trial), it only needs to show that one of the three grounds for denial is valid.  As noted above, Insurer's Motion only seeks summary judgment on the basis that Plaintiff's claim was properly denied because Plaintiff breached the Subject Policy's Captain Warranty (though, Insurer does not abandon the other grounds it provided for denial of Plaintiff's claim).  Plaintiff, of course, has to show that Insurer had no basis upon which to deny the claim.  As such, Plaintiff argues in its motion that all three of the Insurer's grounds for denial were improper.

As discussed in Section A below, it is evident that Plaintiff breached the Captain Warranty because it did not employ a full-time licensed captain for the maintenance and care of the Vessel.  Nevertheless, neither Plaintiff nor Insurer has demonstrated (in their respective summary judgment motions) entitlement to judgment as a matter of law because, as discussed in Section B below, neither party has established whether or not Plaintiff's breach of the Captain Warranty "increased the hazard by any means within the control of the insured."  *See* § 627.409(2), Fla. Stat.  Therefore, it will be necessary to proceed to trial on Plaintiff's breach of contract claim against Insurer.[5]

---

[5] As the breach of contract claim must be tried (*but see infra* notes 12 & 14), and as neither party has sought partial summary judgment in connection with Count I (in the alternative if summary judgment were not granted on Count I in its entirety), it is not necessary to determine the validity of Insurer's second and third grounds for denial of Plaintiff's insurance claim (regarding the hurricane plan and Plaintiff's alleged misrepresentations).  In other words, given that neither party

### A. Breach of Captain Warranty

Plaintiff clearly breached the portion of the Captain Warranty that warrants the employment of a full-time licensed captain for the maintenance and care of the vessel, as the undisputed facts reveal that no such full-time licensed captain was employed.  In attempting to argue otherwise, Plaintiff's primary contention is that it "did not breach the alleged Captain and Crew Warranty because it is invalid and unenforceable due to being vague, ambiguous, and contradictory, especially since it is a contract of adhesion and must be construed against its drafter."  Plaintiff's Motion at p. 5.[6]  Specifically, Plaintiff argues that the first sentence of the Captain Warranty ("Warranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway") conflicts with the second sentence of the Captain Warranty ("Michael Sean Oakley is permitted to operate the vessel without the Captain aboard"). Because Plaintiff claims the warranty is ambiguous, it argues that it must be construed against Insurer as the drafter.  *See* Plaintiff's Motion at pp. 7-11.

---

has established whether or not Insurer properly denied coverage based on Plaintiff's breach of the Captain Warranty, this case would need to proceed to trial on Count I (the only claim against Insurer) even if the Court were to agree with Plaintiff that the second and third grounds for denial of Plaintiff's insurance claim were invalid.  Stated differently, if Plaintiff is correct regarding the second and third grounds for denial, Plaintiff's Motion must still be denied, and if Insurer is correct regarding the second and third grounds, Insurer's Motion must still be denied (as the second and third grounds have not been raised in Insurer's Motion).  Further, Plaintiff's failure to comply with Local Rule 56.1 in many instances makes it difficult to fully analyze these other grounds (especially the hurricane plan issue).  Plaintiff makes several purported factual statements without appropriate record citations, as well as certain legal arguments without adequate support.

[6] The Crew Warranty, [DE 71-4] at p. 8, is a separate warranty.  Although Insurer makes an argument regarding the Crew Warranty in passing, *see* Insurer's Motion at pp. 12-13, whether Plaintiff breached the Crew Warranty is ultimately not probative of whether Plaintiff breached the Captain Warranty.  Moreover, Insurer does not appear to have denied coverage on the basis that Plaintiff breached the Crew Warranty.

The most glaring problem with Plaintiff's argument is that the second sentence Plaintiff points to is only part of the Captain Warranty from the initial 2015 policy.  In fact, the Captain Warranty of the Subject Policy solely contains the first sentence and does not state anything about Mr. Oakley being permitted to operate the Vessel without the captain aboard.  Regardless, even if such language were present, Plaintiff's argument still fails given Insurer's stipulation that Mr. Oakley was permitted to operate the Vessel without the captain aboard.  In other words, Insurer effectively stipulates to the most liberal interpretation of the 2015 Captain Warranty (in Plaintiff's favor, and in a manner that construes the language against Insurer), which is that the full-time licensed captain only needs to be aboard the Vessel while underway if someone other than Mr. Oakley is operating the Vessel.  But this issue only applies to the portion of the Captain Warranty pertaining to whether the captain must be aboard while the Vessel is underway.[7]  The second sentence of the 2015 Captain Warranty has absolutely no bearing on the first portion of the warranty ("a full time licensed captain is employed for the maintenance and care of the vessel"), which pertains to the alleged breach at issue.

This first portion of the Captain Warranty is unambiguous and does not conflict in any manner with the second sentence of the 2015 Captain Warranty.  Plaintiff attempts to inject ambiguity by asking a litany of rhetorical questions, many of which either ponder hypothetical disputes that are not presented here or merely question the meaning of several words with a plain English definition.  *See* Plaintiff's Motion at p. 8.  In fact, Insurer responds by providing the

---

[7] Insurer does not appear to claim (at least in the summary judgment briefing) that Plaintiff breached the "aboard while underway" portion of the Captain Warranty and, in any event, none of the evidence the parties have pointed to shows that anyone other than Mr. Oakley operated the Vessel without the captain aboard.  Thus, the "aboard while underway" portion of the Captain Warranty is irrelevant to the issue presently before the Court.  Instead, the issue is solely whether Plaintiff employed a full-time licensed captain for the maintenance and care of the Vessel.

dictionary definitions of several words Plaintiff claims are ambiguous.  *See* [DE 90] at pp. 7-8.

Regardless, as is evident from the paragraphs that follow, even under the interpretation of "a full

time licensed captain is employed for the maintenance and care of the vessel" that is most

charitable to Plaintiff, Plaintiff still did not employ any such full-time licensed captain.  Moreover,

Plaintiff's argument is disingenuous given that its manager, Mr. Oakley, clearly admitted at his

deposition that no such captain was employed (without expressing confusion as to the meaning).

*See* Deposition of Michael Sean Oakley ("Oakley Depo.") [DE 70-3] at pp. 44-45.  Therefore,

aside from the fact that Plaintiff points to the incorrect Captain Warranty (from 2015), Plaintiff's

argument regarding ambiguity has no bearing on whether Plaintiff breached the warranty that "a

full time licensed captain is employed for the maintenance and care of the [V]essel."

Other than making a misplaced ambiguity argument, Plaintiff argues in passing that it

employed a full-time captain because "Captain Connelly was available full-time to serve as

Plaintiff's backup and/or assistant captain as needed."  Plaintiff's Motion at pp. 10-11.  However,

Captain Connelly's mere availability to serve as a backup or assistant captain does not show – and,

if anything, negates any contention – that he was employed as a full-time captain for the

maintenance and care of the Vessel.[8]

Moreover, the undisputed facts confirm that Captain Connelly was not employed by

Plaintiff as a full-time captain for the Vessel.  Significantly, when asked whether Plaintiff

---

[8] Plaintiff's Motion also launches into a discussion regarding whether the captain was "paid," arguing that he was compensated through dinners and other non-monetary means (and implying that he did not need to be compensated with money to be "employed").  But such discussion misses the thrust of Insurer's argument.  Whatever hypothetical questions Plaintiff posits about what it means to be a "full-time" captain, it certainly does not mean being "available" as a back-up captain when the boat is in another country for over a month with you never stepping foot on it.  *See* Insurer Stmt. ¶ 46 (undisputed) ("Captain Connelly was never aboard the Subject Vessel in the Bahamas in 2019.").

employed a full-time captain for the maintenance and care of the Vessel (at any point between when the initial policy was obtained in 2015 and the date of the hurricane), Mr. Oakley testified, "No." Oakley Depo. at pp. 44-45.[9] Similarly, Plaintiff's response to an interrogatory indicates that no captain was employed between June 10, 2019 (the date the Subject Policy went into effect) and the date of loss. [DE 76-2] at No. 9.[10] In fact, Captain Connelly is "retired" and does not "get to captain vessels on a regular basis, as [he] once did." Affidavit of Captain Scott Connelly [DE 80-7] ¶ 5. He was also never aboard the Vessel while it was in the Bahamas in 2019. Insurer Stmt. ¶ 46 (undisputed).[11] Ultimately, even if the facts lend any assistance to any argument that Captain Connelly ever worked as a captain for the Vessel, the evidence makes clear that he never did so as the full-time captain. Therefore, Plaintiff breached the Captain Warranty.

### B. Whether Plaintiff's Breach Increased the Hazard

Although the mere fact that Plaintiff breached the Captain Warranty may constitute a sufficient ground, on its own, for denial of Plaintiff's insurance claim under maritime law, *see Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 396 F. Supp. 3d 1170, 1174-77 (S.D. Fla. 2019), Florida law requires more. Under Florida law,

> A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or

---

[9] Mr. Oakley followed up by stating that he was the full-time captain. *Id.* at p. 45. Nonetheless, Plaintiff acknowledges that "Mr. Oakley's status as an operator, did not qualify him as the Subject Vessel's employed full time, captain for purposes of satisfying the Captain Warranty." Insurer Stmt. ¶ 34 (undisputed).

[10] A subsequent interrogatory response, to an interrogatory inquiring about the duties and responsibilities of the Vessel's captain during the same period of time, indicates such duties and responsibilities were to "assist Mr. Oakley when needed." [DE 76-2] at No. 11. While this response potentially implies the existence of some captain for the Vessel, it certainly does not evidence the employment of any "full-time" captain.

[11] The Vessel, which was damaged by Hurricane Dorian at the end of August 2019, was moved to the Bahamas (by Mr. Oakley) in July 2019. *See* Oakley Depo. at p. 18.

application does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

§ 627.409(2), Fla. Stat.   Therefore, Plaintiff's breach of the Captain Warranty only justified Insurer's denial of Plaintiff's claim if Plaintiff's breach "increased the hazard by any means within the control of the insured."  A "hazard" under § 627.409(2) concerns "danger to the insured vessel itself."  *Rosin*, 757 F. Supp. 2d at 1258 (quoting *E. Ins. Co. v. Austin*, 396 So. 2d 823, 825 (Fla. 4th DCA 1981)).

The problem with Insurer's Motion is that it fails to address the increased-the-hazard requirement in any manner (Insurer only addresses the issue in responding to Plaintiff's Motion).[12] That is because Insurer ignores the relevant choice-of-law provision and, instead, incorrectly applies maritime law, which does not contain the same requirement.  For this reason, *Ocean Reef*, which applies maritime law and on which Insurer heavily relies, is inapposite.  Notably, *Ocean Reef* makes clear that the insurance policy in that case was not subject to a choice-of-law provision. 396 F. Supp. 3d at 1174 n.3.  In any event, by failing to address whether Plaintiff's breach increased

---

[12] The Court could likely only dispose of this increase-the-hazard issue (and the case against Insurer) before trial if it grants summary judgment to Insurer as a non-movant (given that Insurer did not raise the increase-the-hazard issue in its motion and only did so in opposition to Plaintiff's Motion).  However, if the Court wishes to consider such a course of action, it likely needs to first provide Plaintiff with notice and an opportunity to respond in accordance with Rule 56(f) of the Federal Rules of Civil Procedure.

I note that Insurer's ability to prevail on the increase-the-hazard issue (at least at this stage if Plaintiff is first provided with notice and an opportunity to respond pursuant to Rule 56(f)) will likely depend on the outcome of Plaintiff's Daubert Motion to Exclude Opinion Testimony of Defendant Underwriters Expert Thomas E. Danti [DE 60].  That is because Insurer's increase-the-hazard argument regarding the breach of the Captain Warranty (in Insurer's response to Plaintiff's Motion) is premised on the expert testimony of Mr. Danti.  *See* [DE 90] at p. 13.  In replying to Insurer's argument, Plaintiff essentially implies that Insurer's increase-the-hazard argument should fail based on the arguments Plaintiff made for exclusion of Captain Danti's opinion.  *See* [DE 97] at p. 10.

the hazard in this case, Insurer has failed to satisfy its burden, as the moving party, "to demonstrate the basis for its motion, and [to] identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Celotex*, 477 U.S. at 323). In other words, Insurer's Motion fails to show that Insurer is entitled to judgment as a matter of law.[13]

While Plaintiff's Motion does address the requirement that a breach increase the hazard, it does not fare any better. It too fails to establish that Plaintiff is entitled to judgment as a matter of law. Plaintiff only addresses the increase-the-hazard issue in two short paragraphs, the majority of which do not even pertain to the relevant breach of the Captain Warranty. *See* Plaintiff's Motion at pp. 17-18. Preliminarily, Plaintiff asserts that none of its actions "increase[d] the insurance risk . . . because the actions have been expressly permitted by the [P]olicy." *Id.* at p. 17. Of course, that is inaccurate given that Plaintiff's failure to employ a full-time licensed captain (for the maintenance and care of the Vessel) violated the Policy. Then, after addressing other alleged breaches of the Policy (that do not pertain to whether a full-time licensed captain was employed for maintenance/care), Plaintiff concludes the increase-the-hazard section by stating the following:

> Moreover, with respect to the damage sustained by Hurricane Dorian on August 29, 2019, Defendant claims that the vessel should have been under the "care and maintenance" of a "full-time captain", but apparently only while the vessel is underway. The vessel was not underway when it was damaged by the Hurricane. It is just unclear how Defendants' risk has increased more through any action of Plaintiff.

---

[13] Insurer filed a Reply [DE 93] in support of Insurer's Motion, wherein Insurer argues its motion should be granted by default because Plaintiff did not file a response to Insurer's Motion. Instead, Plaintiff filed Plaintiff's Motion without filing a separate response, which Insurer contends advances separate and distinct arguments instead of responding to Insurer's Motion. [DE 93] at p. 2 n.1. While true to a certain extent, Plaintiff's Motion does at least demonstrate that Insurer's Motion should be denied on account of Insurer's failure to address the increase-the-hazard issue therein. *But see supra* note 12; *infra* note 14.

12

*Id.* at pp. 17-18.  Insurer, however, does not ever appear to claim that the Vessel should have only been under the care and maintenance of the captain while underway.

In any event, Plaintiff's argument regarding whether the relevant breach of the Captain Warranty increased the hazard is overly conclusory and unsupported by evidence.  Thus, Plaintiff has also failed to satisfy its burden, as the moving party, "to demonstrate the basis for its motion, and [to] identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'"  *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Celotex*, 477 U.S. at 323).  I note that while Insurer will have the burden at trial to prove an increase of the hazard, *see Rosin*, 757 F. Supp. 2d at 1258, Plaintiff has not attempted to satisfy its summary judgment burden by arguing "that [Insurer] has failed to present sufficient evidence to support an essential element of [Insurer's] case."  *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Celotex*, 477 U.S. at 322-23).  Therefore, Plaintiff has not shown that it is entitled to summary judgment.

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Insurer's Motion [DE 75] and **DENY** Plaintiff's Motion [DE 81].[14]

---

[14] Alternatively, even though Insurer did not specifically request partial summary judgment, the District Court could grant Insurer's Motion in part.  Specifically, it could find that Plaintiff breached the Captain Warranty by failing to employ a full-time licensed captain for the maintenance and care of the Vessel (for the reasons discussed in Part II.A of the Analysis section above).  Such a course of action may be best, and would present few negative consequences, given that this matter is set for a bench trial. *Cf. Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc.*, 661 F. App'x 629, 637 n.6 (11th Cir. 2016) ("It bears noting that while partial summary judgment serves as a valuable tool of judicial management that prunes the issues for trial, courts should not overlook possible negative consequences of unfair prejudice and jury confusion. The risk of these potential consequences is especially prevalent when partial summary judgment is granted on a single portion of one claim, as in the instant case.").  If the Court grants partial summary judgment regarding the breach of the Captain Warranty, that would only leave the increase-the-hazard issue for trial (between Insurer and Plaintiff), in addition to grounds 2 and 3 for denial of Plaintiff's claim (if Insurer pursues such grounds at trial).  However, that assumes that the Court does not

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

   **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 5th day of February 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

---

dispose of the increase-the-hazard issue (and, consequently, Plaintiff's claim against Insurer) in accordance with Rule 56(f).  *See supra* note 12.