IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:  0:20-cv-60520-RAR

SERENDIPITY AT SEA, LLC,

    Plaintiff,

vs.

UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO POLICY
NUMBER 187581 and

USI INSURANCE SERVICES, LLC,

    Defendants.

_____/

## UNDERWRITERS' OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATIONS   [DE 103] ON SUMMARY JUDGMENT MOTIONS

Defendant, UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NUMBER 187581 (hereinafter "UNDERWRITERS"), by and through its undersigned counsel, hereby makes and serves this its Objections to the Magistrate's Report and Recommendations [DE 103] as follows:

**SECTION II, Paragraph A. "Breach of Captain Warranty"**

UNDERWRITERS are in agreement with the Magistrate's overall finding that Plaintiff breached the Captain Warranty of the Subject Insurance Policy [DE 103, p. 10] where the Report states:

> "Ultimately, even if the facts lend any assistance to any argument that Captain Connelly ever worked as a captain for the Vessel, the evidence makes it clear that he never did so as the full-time captain.  Therefore, Plaintiff breached the Captain Warranty."

UNDERWRITERS are further in agreement with the Magistrate's finding that the Captain Warranty, ("a full time licensed captain is employed for the maintenance and care of the vessel"), applicable to this case, is unambiguous and enforceable against the Plaintiff. [DE 103, p. 8, ¶ 1].

As stated by the Magistrate, UNDERWRITERS are entitled to a partial summary judgment on Plaintiff's breach of the Policy's Captain's Warranty in advance of trial [DE 103, p. 13, fn 14]. UNDERWRITERS respectfully object to the Magistrate's finding that it is necessary to specifically request a partial summary judgment ruling from the Court, where the undisputed facts and law support such as ruling. It is UNDERWRITERS' position that their prior request for final Summary Judgment, necessarily encompasses a request for Partial Summary Judgement on issues which are appropriate for summary disposition. UNDERWRITERS specifically request that the District Court grant a partial summary judgement against the Plaintiff, finding that Plaintiff was in breach of the Captain Warranty during the policy year applicable to the Subject Loss. If the matter is to be tried, the requested partial summary judgement will streamline the proceedings and serve judicial economy. The Magistrate is absolutely correct in explaining that there will be no prejudice to the Plaintiff, in terms of trial presentation, as this matter will be tried before the bench [DE 103, p. 13, fn 14].

**SECTION II, Paragraph B. "Whether Plaintiff's Breach Increased the Hazard"**

The Magistrate is correct that UNDERWRITERS' Motion for Summary Judgment did not brief the Fla Stat. Section 627.409(2), increase of hazard issue [DE 103, p. 10-11]. This was in part, because of reliance on the *Ocean Reef Charters* decision, but also because UNDERWRITERS thought, prior to the exchange of the Summary Judgment briefing, that there would be a disputed issue of material fact that would preclude summary judgment on the

increase of hazard issue.    A review of the briefing, demonstrates that Plaintiff did not oppose the portions of UNDERWRITERS' Statement of Material Facts applicable to the increase the hazard issue with citations to record evidence.  For this reason, the Court may consider those facts undisputed and grant summary judgment on the increase the hazard issue in UNDERWRITERS' favor.  Fed. R. Civ. P. 56(e)(3) and S.D. Fla. L.R. Rule 56.1(c).   The cited Local Rule states as follows:

> **(c) Effect of Failure to Controvert Undisputed Facts.** All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply

As the record stands and as will be set forth below, it is undisputed that Plaintiff's breach of the Captain Warranty "increased the hazard by any means within the control of the insured" and specifically increased the "danger to the insured vessel itself" through the breach of the Captain Warranty.  *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010).   UNDERWRITERS would respectfully object to the Magistrate's comment that it would be necessary to give the Plaintiff additional notice and an additional opportunity to respond, as the Summary Judgment on the increase the hazard issue may be decided solely on UNDERWRITERS' previously submitted Material Facts and the Plaintiff's failure to controvert those facts with citations to record evidence during the Summary Judgment briefing process. S.D. Local Rule 56.1(b)(1)(B).

For ease of review, UNDERWRITERS will set forth those Material Facts which pertain to the increase the hazard issue for the Court's review, along with Plaintiff's response.

| **UNDERWRITERS' Statement of Material Facts [DE 76]** | **Plaintiff's Response [DE 80]** |
|---|---|
| 54. Plaintiff admittedly had no employed, full time, licensed captain for the maintenance and care of the Subject Vessel at the time of the loss. | Disputed (Exhibits 6 & 7 Affidavits of Capt. Connelly) which indicate he has always been the back-up captain, not only for this boat, but others the Plaintiff has owned as well. Further, that requirement is vague and ambiguous and therefore unenforceable.<br><br>Defendant admits Capt. Connelly was approved as a full-time captain in its number allegation number 45 herein.<br><br>**This fact is admitted as there is no citation to contrary record evidence and based on the partial summary judgment as to the Captain Warranty.[1]** |
| 56. Within a few days of arrival in the Bahamas, Mr. Oakley returned to Florida and left M/Y SERENDIPITY at the dock, with a plan to return in late August. [DE 70-3, Oakley 30(b)(6) Dep. 34:4-13]. | Undisputed. The boat was positioned for their vacation, at an approved location in accordance with the policy Declarations page navigation limits. |
| 57. At the time of the 2019, renewal application, the Subject Vessel's home port was reported as Cape Marina in Cape Canaveral, Florida. This location was used for rating and underwriting purposes. [Ex. "1", Aff. John Hewlett ¶ 37]. | Disputed. The subject marinas, Ocean Club and Cape Marina, are located next to each other in Port Canaveral. No weather pattern, environmental factor, security risk, or other event created a higher risk for the carrier due to the slight deviation in the mooring location, nor is any explanation offered by Defendant USI for why this would-be material or relevant.<br><br>**This fact is admitted as there is no citation to contrary record evidence. Further Plaintiff's lawyer argument does not controvert the substance of the material fact.** |

---

[1] Underwriters explanation as to Plaintiff's response to the cited Material Fact will be **in bold text** under Plaintiff's response.

| UNDERWRITERS' Statement of Material Facts [DE 76] | Plaintiff's Response [DE 80] |
|---|---|
| 58. The Plaintiff did not disclose that the Subject Vessel would be re-located to the Abacos in the Bahamas and docked behind a private residence from July to October of 2019. [Ex. "1", Aff. John Hewlett ¶ 38]. | Disputed. The Hurricane Plan does not state the subject vessel has to be at the Cape Marina during a hurricane, it only states recommendations of what should be done if the subject vessel was there during a hurricane. (Exhibit 13 Hurricane Plan attached hereto). Naturally, it would not serve any of the parties' interests if a vessel was required to be kept at a certain location during a hurricane, regardless of the risk of damage from a hurricane or the hurricane's expected path. There is no requirement to do so. (Exhibit 3 Green, 18:8-14.<br><br>**This fact is admitted as there is no citation to contrary record evidence. Ms. Green's testimony, included below, does not controvert the material fact advanced.**<br><br>Ms. Green testified "Green, Jessica, (Page 18:8 to 18:14)<br> Q   And every time it went from one marina to another marina to be kept there, did they have to prepare a new hurricane plan each time that happened?<br>A   I am unaware of that process for this particular client because I just did the initial hurricane plan.  I never received any changes of the location was my-- |
| 59. This change in mooring location, substantially increased the risk to the Subject Vessel during the hurricane season. Had it been disclosed by Plaintiff, underwriters **may have declined the risk** or would have proposed new terms including additional premium, an increased Named Windstorm Deductible and a revised hurricane plan. [Ex. "1", Aff. John Hewlett ¶ 39]. | Disputed. Defendant again proffers hypotheticals may have declined the risk, may have required new terms). Hurricane Dorian was at that time predicted to hit Cape Canaveral, the primary location for the subject vessel. It wasn't till hours before it hit Paradise Cay, that any prediction said it would hit the Abacos. (Exhibit 9, Wx Reports attached hereto) Further, when defendant was asked Admit that on July 27, 2020 when the MY Serendipity was brought to the Bahamas, Hurricane Dorian was not predicted to hit the Bahamas, Underwriters responded, |

| **UNDERWRITERS' Statement of Material Facts [DE 76]** | **Plaintiff's Response [DE 80]** |
|---|---|
| | "Underwriters admit only that Hurricane Dorian had not formed as of July 27, 2020." (Exhibit 14 Admissions, Admission 17).<br><br>**This fact is admitted as there is no citation to contrary record evidence. Further Plaintiff's lawyer argument does not controvert the substance of the material fact.** |
| 63. A weather window existed between August 24, 2019 and the morning of August 30, 2019, during which weather conditions (both forecast and actual) allowed for the safe departure of M/Y SERENDIPITY from Abaco for a return voyage to Cape Marina in Cape Canaveral, Florida. [Ex. "3" Dooley SeaWeather Expert Rpt. p. 39, bullet 2]. | Disputed. At that stated time frame, the hurricane was still predicted to hit Florida's coast line and not yet predicted to hit the Abacos. Trying to relocate the boat would have been a reckless endeavor.<br><br>**This fact is admitted as there is no citation to contrary record evidence.** |
| 64. AIS data shows numerous vessels evacuating the Bahamas and moving across to Florida in the days before Dorian's landfall in Great Abaco Island. [Ex. "3" Dooley SeaWeather Expert Rpt. p. 39, bullet 3]. | "Irrelevant" Does that mean crowd mentality would be the best course of action. Also, it's not stated as to the destinations of those boats, they could have been headed south-west to islands further away from the potential threat.<br><br>**This fact is admitted as there is no citation to contrary record evidence.** |
| 65. Departures from the Bahamas during this period reduced the danger Dorian posed to vessels in the vicinity of Great Abaco Island. [Ex. "3" Dooley SeaWeather Expert Rpt. p. 39, bullet 4]. | Disputed The risk had not manifested itself at that time. (Exhibit 9 Wx Reports) Also, "Underwriters admit only that Hurricane Dorian had not formed as of July 27, 2020.". (Exhibit 14 Admissions, Admission 17).<br><br>**This fact is admitted as there is no citation to contrary record evidence. The weather reports cited by Plaintiff are hearsay.** |

| **UNDERWRITERS' Statement of Material Facts [DE 76]** | **Plaintiff's Response [DE 80]** |
|---|---|
| 66. Based on the forecast information obtained by Dooley SeaWeather, there is no question that a licensed Captain assigned to M/Y Serendipity would have made the decision to evacuate himself or herself and M/Y Serendipity from the Bahamas in the advance of Hurricane Dorian's arrival. [Ex. "4" Danti Expert Rpt. p. 5, ¶ 3]. | Disputed Defendants conclusionary language contradicts the weather reports that existed at that time. Are personal interpretations by lay people take precedence over licensed meteorologists? (Exhibit 9).<br><br>**This fact is admitted as there is no citation to contrary record evidence. The weather reports cited by Plaintiff are hearsay.** |

The undisputed record evidence set forth above, shows conclusively that Plaintiff's breach of the Captain Warranty increased the hazard to the vessel, while it sat in the Bahamas without a captain to move it back to Florida and out of the path of hurricane Dorian. Plaintiff has no testimony by an expert or competent lay witness to controvert that of Dr. Dooley, (UNDERWRITERS' weather expert) on the path of the hurricane, weather windows for evacuation and the AIS data showing the evacuation of other vessels from the Abacos in advance of the hurricane. Plaintiff further has no testimony by an expert or competent lay witness to controvert that of Captain Thomas Danti (UNDERWRITERS' Captain and Seamanship Expert)[2] who has opined that an employed full time licensed captain assigned to M/Y Serendipity would have developed a plan to protect the vessel from hurricanes and certainly would have made the decision to evacuate the vessel back to its home port in Florida based on the weather forecasts available in advance of the hurricane. Plaintiff further failed to controvert the testimony of John

---

[2] The Court has yet to rule on Plaintiff's *Daubert* Motion directed to the testimony of Captain Danti [DE 60]. The issues have been fully briefed with Underwriters' Opposition [DE 67] and Plaintiff's Reply [DE 72]. It is UNDERWRITERS' position that the Court will deny the *Daubert* Motion as it is meritless. Even if the Motion is granted, in whole or in part, UNDERWRITERS are still entitled to Summary Judgment on the increase the hazard issue based on the unrebutted testimony of Dr. Dooley and Mr. Hewlett.

Hewlett (underwriter for the Subject Policy) in which he stated that changing the vessel's mooring location from Cape Canaveral, Florida to Abaco in the Bahamas, during hurricane season, substantially increased the risk (and increased the hazard) to the Subject Vessel [DE 76, ¶ 59]. With these material facts undisputed, it is patent that Plaintiff's breach of the Captain Warranty, materially increased the hazard to the vessel itself in satisfaction of the requirements of Florida Statute 627.409(2). UNDERWRITERS are entitled to Summary Judgment on this issue in advance of trial.

On this issue, UNDERWRITERS would further incorporate by reference their briefing and legal argument, which was made in UNDERWRITERS' Response in Opposition to Plaintiff Serendipity at Sea, LLC's Cross Motion for Summary Judgment [DE 90]. Specifically, section VII of the Opposition titled "Plaintiff's Breaches Increased the Hazard to the Subject Vessel and All Were in the Control of the Insured". The Court should also be aware, that Plaintiff Reply Briefing [DE 97] did not respond on the increased hazard issue, effectively conceding to UNDERWRITERS' position.

WHEREFORE, Defendant UNDERWRITERS seek an Order of this Honorable Court:

1. Granting UNDERWRITERS a Partial Summary Judgement as to Plaintiff's Breach of the Policy's Captain Warranty;
2. Granting UNDERWRITERS a Partial Summary Judgment on the Florida Statute Florida Statute 627.409(2), Increased Hazard requirement;
3. Granting UNDERWRITERS Final Summary Judgment as to Count One of the Plaintiff's 4th Amended Complaint;
4. As well as for all further relief this Court deems just and proper including an award of defense costs incurred against the Plaintiff.

Respectfully Submitted,

By:  /s Andrew N. Mescolotto
ANDREW N. MESCOLOTTO (28141)
FERTIG AND GRAMLING
200 Southeast 13th Street
Fort Lauderdale, FL 33316
PH:   (954) 763-5020
FX:   (954) 763-5412
anm@fertig.com
Attorneys for Underwriters

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on February 19, 2021 on all counsel or parties of record on the Service List below.

Respectfully Submitted,

By:  /s Andrew N. Mescolotto
ANDREW N. MESCOLOTTO (28141)
FERTIG AND GRAMLING
Attorneys for the Underwriters

## SERVICE LIST

| | |
|---|---|
| Ronald J. Anania<br>Law Offices of Ronald J. Anania, P.A.<br>10910 SW 10th Court<br>Davie, FL 33324<br>PH:  (954) 448-1872<br>ananialawfirm@gmail.com<br>*Attorney for Plaintiff*<br>*VIA CM/ECF* | ANDREW N. MESCOLOTTO (28141)<br>FERTIG AND GRAMLING<br>200 Southeast 13th Street<br>Fort Lauderdale, FL 33316<br>PH:   (954) 763-5020<br>FX:   (954) 763-5412<br>anm@fertig.com<br>*Attorneys for Underwriters*<br>*VIA CM/ECF* |
| | Juan C. Martinez (009024)<br>GRAYROBINSON, P.A.<br>333 S.E. 2nd Ave., Suite 3200<br>Miami, FL 33131<br>PH:  305-416-6880<br>FX:   305-416-6887<br>Juan.martinez@gray-robinson.com<br>ecianella@gray-robinson.com<br>*Attorney for USI Insurance*<br>*Via CM/ECF* |