**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-CV-60520-RUIZ/STRAUSS

**SERENDIPITY AT SEA, LLC,**

    Plaintiff,
v.

**UNDERWRITERS AT LLOYD'S OF**
**LONDON SUBSCRIBING TO POLICY**
**NUMBER 187581,**

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S *DAUBERT*[1] MOTION

THIS MATTER came before the Court upon Plaintiff's *Daubert* Motion to Exclude Opinion Testimony of Defendant Underwriters' Expert Thomas E. Danti ("Motion") [DE 60]. The Motion has been referred to me, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law [DE 110]. I have reviewed the Motion, the Response [DE 67] and Reply [DE 72] thereto, and all other pertinent portions of the record. For the reasons discussed herein, the Motion will be **DENIED**.

### BACKGROUND

Plaintiff owns a 61-foot yacht, M/Y Serendipity ("Vessel"), that was damaged on August 30, 2019 by Hurricane Dorian, while docked in the Bahamas. Shortly thereafter, Plaintiff filed an insurance claim ("Claim"), which was subsequently denied. Consequently, Plaintiff commenced this action against Defendant, Underwriters at Lloyd's of London Subscribing to Policy Number

---

[1] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

187581 ("Insurer"), asserting that Insurer breached the subject insurance policy by denying the Claim. Insurer has raised various defenses and has argued it properly denied the Claim for three separate reasons: (1) Plaintiff breached a Captain Warranty (which warrants that "a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway"); (2) Plaintiff breached a hurricane plan; and (3) Plaintiff misrepresented information in its insurance application.

Defendant has retained Thomas E. Danti ("Danti") as an expert in this matter. Danti submitted an expert report dated October 7, 2020 ("Danti Report") [DE 67-1]. Therein, he provides several opinions based on his review of the facts and his "experience as a Seaman, Officer in the Merchant Marine, Commander in the United States Naval Reserve, Yacht Captain, Professor of Marine Science at Florida Institute of Technology, Instructor/Dean of Chapman School of Seamanship, NMC approved Instructor . . . ." Danti Report at 2, 4-8. He opines that: (1) Plaintiff's failure to employ a full-time licensed captain contributed to the loss of the Vessel; (2) the agreed mooring location for the Vessel (Cape Marina in Port Canaveral, Florida) offers favorable hurricane protection features; (3) Automatic Identification System ("AIS") tracking showed numerous vessels departing the Bahamas before Hurricane Dorian; and (4) the Vessel was not prepared for hurricane season, and its lack of preparation contributed to its loss. *See id.* at 4-8.

## LEGAL STANDARD

"Under [Federal] Rule [of Evidence] 702 and *Daubert*, district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The court's inquiry, however, is a flexible one. *Daubert*, 509 U.S. at 594. For an expert's testimony

to be admissible, a party must demonstrate that the following elements are satisfied (by a preponderance of the evidence):

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink*, 400 F. 3d at 1291-92 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). While an analysis of the foregoing elements may necessarily entail some overlap, the concepts of qualification (first element), reliability (second element), and fit or helpfulness (third element)[2] are nonetheless distinct concepts that should not be conflated. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

In exercising its gatekeeping role, a court should not "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* Instead, a court should analyze the methodology of the expert at issue. *Id. See also Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). That is because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In other words, the gatekeeper role of the court "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).

---

[2] The third element "goes primarily to relevance." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *Daubert*, 509 U.S. at 591).

## ANALYSIS

Danti's opinions and testimony should not be excluded. Although the Motion lacks a rigorous analytic framework and improperly conflates the distinct requirements of qualification, reliability, and helpfulness,[3] Plaintiff does appear to argue that Danti fails to satisfy all three requirements. As discussed below, that is not the case.

### I. QUALIFICATION

Danti is clearly qualified to serve as an expert in this case. "[E]xperts may be qualified in various ways." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). A proposed expert may be qualified based on, *inter alia*, his experience in a field. *Id.* at 1260-61. "In fact, the plain language of Rule 702 makes this clear: expert status may be based on 'knowledge, skill, *experience,* training, or education.'" *Id.* at 1261 (emphasis in original). The qualification "inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *E.g., Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (Rosenbaum, J.) (citations and internal quotation marks omitted).

As noted above, Danti's Report indicates that he has a wealth of relevant experience in seamanship that renders him qualified to provide the opinions in his report. Further, his curriculum vitae [DE 67-2] elaborates on his relevant experience. Plaintiff's primary objection regarding qualification is that Danti is not qualified to serve as an expert in this case because Danti is not an insurance expert and this is an insurance case. While this is a case where Plaintiff has alleged a

---

[3] Plaintiff's Reply [DE 72] does not clarify or focus any of the issues. Instead, it largely reiterates (apparently having copied and pasted) most of the points raised in the Motion, with a few new pages of information being added, starting towards the middle of page 11 (consequently causing the Reply to exceed the permissible page limit under Local Rule 7.1(c)(2)).

breach of an insurance policy, the crux of Danti's opinions is that Plaintiff's failure to employ a full-time licensed captain played a role in the loss of the Vessel and that experienced captains would have acted differently than Plaintiff did with a hurricane approaching. Danti's experience surely qualifies him to opine on such matters (and, as discussed below, these are relevant issues).[4] Notably, other judges in this district have found Danti qualified "to opine on matters of proper seamanship." *See, e.g.*, *Button v. Royal Caribbean Cruises, Ltd.*, No. 12-CV-23624-UU, 2013 WL 10180993, at *1 (S.D. Fla. July 22, 2013) ("As the Dean of Instruction at the Chapman School of Seamanship for the past 14 years, Danti has the necessary knowledge to opine on matters of proper seamanship.").

## II. RELIABILITY

Given the explanations and application in Danti's Report, Danti's extensive experience as a captain and instructor, and his extensive knowledge regarding hurricane preparedness in this context, render his opinions reliable. As reflected in the Committee Note to the 2000 Amendments to Rule 702, if an expert "is relying solely or primarily on experience, then the witness must explain

---

[4] There is one issue with Danti's Report that Plaintiff perhaps implied, but did not cogently raise, in the Motion by arguing that Danti is not an "insurance expert." The issue is that Danti's Report specifically opines that Plaintiff breached the Captain Warranty and the hurricane plan. Whether Plaintiff "breached" any provisions of the insurance contract is a legal issue for the Court to determine based on the facts of the case. However, these statements are not a basis for excluding Danti's testimony. These conclusions are not the crux of Danti's Report and are not a basis for claiming that he is masquerading as an "insurance expert." Moreover, as Defendant noted in its response, there is less risk associated with an expert presenting potential legal conclusions in a bench trial (as scheduled here) compared to a jury trial. *See Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at *1 (S.D. Fla. June 2, 2017) ("While *Daubert* requires trial courts to act as gatekeepers to ensure a jury is not exposed to speculative, unreliable expert testimony, these concerns are greatly reduced when the expert will testify during a bench trial." (internal quotation marks and citations omitted)). Nevertheless, if Danti testifies at trial, Danti may not testify that Plaintiff "breached" the Captain Warranty or the hurricane plan, and Danti may not offer any other legal conclusions. He may, however, explain why Plaintiff's actions or inaction led to the loss of the Vessel and why, based on his experience, an experienced captain would or would not have acted differently.

*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261. A trial court cannot simply "tak[e] the expert's word for it." *Id.* "[I]t remains a basic foundation for admissibility that [p]roposed [expert] testimony must be supported by appropriate validation—*i.e.,* good grounds, based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590) (internal quotation marks omitted).

In his report, Danti first notes the case materials that he has reviewed and proceeds to provide his relevant background, experience, and sources of knowledge. Danti Report at 1-3. He then provides relevant factual information pertaining to the Vessel's hurricane plan, the Captain Warranty, a pertinent sea weather analysis leading up to Hurricane Dorian, Vessel specifications, and a distance calculation. *Id.* at 3-4. Danti next sets forth his opinions, providing support for each opinion. For instance, in opining that Plaintiff's failure to employ a full-time licensed captain contributed to the loss of the Vessel, Danti explains how a full-time licensed captain would have been trained and how such a captain would have monitored a hurricane threat and made contingent plans in the event of a such a threat. *Id.* at 4-5. Danti further explains that a full-time licensed captain would have made the decision to, and would have been able to, quickly evacuate the Bahamas in time to avoid the hurricane. *Id.* at 5. In further opining how a full-time licensed captain would have acted and in explaining the importance of a hurricane plan, Danti connects his relevant experience. He explains how the agreed mooring location in Florida would have provided greater hurricane protection, and he discusses his relevant experience in overseeing annual hurricane planning at the Chapman School of Seamanship, where he has been for 32 years. *Id.* at 5-7. Notably, Chapman maintains approximately 75-100 vessels (on land and in water), and it has

6

never lost a vessel during the hurricane season. *Id.* at 3, 7. Succinctly, the issues on which Danti opines expressly touch on what Danti does – what he has excelled at (and taught) for decades.

Plaintiff does not appear to quibble with the fact that Danti has extensive background, experience, and knowledge in the business of being a vessel captain and in preparing vessels for hurricanes. Instead, in arguing against reliability, Plaintiff returns to claiming Danti's opinions are not reliable because this is an insurance case. This argument is completely unavailing (and, to the extent Plaintiff is concerned about Danti offering legal conclusions regarding the insurance contract, Danti will not be permitted to do so, *see supra* note 4). Additionally, Plaintiff objects to what it believes to be false or disputed facts in Danti's Report. However, these issues go to weight, not admissibility. Plaintiff was free to depose Danti regarding these issues during discovery, and it will be free to cross-examine Danti regarding these issues if this case proceeds to trial. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). In sum, none of the issues Plaintiff raises sufficiently undermine the reliability of Danti's opinions to merit exclusion.

### III.   HELPFULNESS

Danti's testimony will aid the trier of fact in determining one or more facts in issue. Provided that Insurer proves a breach of the Captain Warranty, it will also be required to show that the breach "increased the hazard" in order to show that Insurer properly denied the Claim on account of the breach. *See* § 627.409(2), Fla. Stat. ("A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application does not void the policy or contract, or constitute a defense to a loss thereon, *unless such breach or violation increased the hazard by any means within the*

*control of the insured*." (emphasis added)).  *See also* Report and Recommendation [DE 103].  A "hazard" under § 627.409(2) concerns "danger to the insured vessel itself."  *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1258 (S.D. Fla. 2010) (quoting *E. Ins. Co. v. Austin*, 396 So. 2d 823, 825 (Fla. 4th DCA 1981)).

Here, Danti explains, based upon his specialized knowledge and experience, why Plaintiff's failure to employ a full-time licensed captain – a failure Plaintiff's manager clearly admitted at his deposition, *see* Report and Recommendation [DE 103] – increased the hazard.  Danti's opinions and explanations provide information that is undoubtedly beyond the purview of the average lay person.  *See Frazier*, 387 F.3d at 1262 ("[Under the helpfulness] requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.").  Assuming a breach of the Captain Warranty occurred, Danti fills in the next step – why that matters from a practical perspective.  This is exactly what the Court needs to know in the event it finds a breach of the Captain Warranty, and the information Danti provides seems particularly apt for expert testimony given that it is information not possessed by the average lay person.  Ultimately, because Danti's testimony will assist the trier of fact with determining "*a* fact in issue," and because the other *Daubert* requirements are satisfied, Danti's expert testimony is admissible.  *See Rink*, 400 F. 3d at 1292 (emphasis added).

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Motion [DE 60] is **DENIED**.[5]

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 16th day of March 2021.

Jared M. Strauss
United States Magistrate Judge

---

[5] *But see supra* note 4.