UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 20-cv-60520-RAR

SERENDIPITY AT SEA LLC

    Plaintiff,

vs.

UNDERWRITERS AT LLOYDS OF
LONDON SUBSCRIBING TO POLICY
NUMBER 187581

    Defendant.
_____/

## JOINT PRETRIAL STIPULATION

Plaintiff, SERENDIPITY AT SEA, LLC and Defendant, UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY NUMBER 187581 by and through undersigned counsel, and pursuant to S.D. Fla. L.R. Rule 16.1(e) and this Court's Order [ECF No. 178 and ECF No. 197], hereby file the Joint Pretrial Stipulation.

**(1)   A short concise statement of the case by each party in the action.**

    a.  **Plaintiff's Statement**

Plaintiff Serendipity at Sea LLC ("Serendipity") is a Florida limited liability company owned and operated by Michael Sean Oakley and his wife Jacqueline English. ("the Oakley''). Serendipity owns a 2004 61-foot Viking motor yacht. The Oakley's had insured the vessel from 2015 through 2019 with Lloyds of London through a Sea Wave Yacht Insurance policy. The policy had been renewed each year and the last renewal was from June 10, 2019 through June 2020. The insurance policy provided for hull coverage in the amount of $565,500., with a hurricane deductible of $56,550.

This matter was previously litigated and a  Summary Judgment was granted in favor of the defendant on the basis that Serendipity had breached the captain warranty by  failing to employ a licensed time Capt. for its care, maintenance, and while underway. This court also found that the failure to employ a licensed full-time Captain increased the risk to the vessel during Hurricane Dorian based upon uncontroverted expert testimony presented by defendant. The matter was appealed.  The Eleventh Circuit affirmed as to the breach of the Captain warranty,  but reversed and remanded as to whether the breach increased the risk.  The Eleventh Circuit held that there was a factual dispute sufficient as to whether the failure to employ a licensed full time Captain increased the risk by any means within the control of the insured pursuant to Florida Statute § 627.409.

 The insurance policy specifically provided navigation limits which included the Bahamas. On or about July 27, 2019, Sean Oakley, along with two friends took the vessel to Treasure Cay in the Bahamas, and it was to remain there for several months for pleasure cruising. The vessel was docked behind a private home named Pink Paradise.

In late August 2019, hurricane Dorian struck the Bahamas. The vessel was severely damaged in the storm and considered a constructive total loss. This lawsuit ensued to recover the policy limits less the deductible.

b. **Defendant's Statement**

Defendant Underwriters renewed Serendipity at Sea, LLC's marine insurance policy on its 2004 61 foot Viking Motor Yacht named M/Y Serendipity on June 10, 2019, while the vessel was located at Port Canaveral, Florida, which Serendipity had disclosed as the vessel's primary mooring location.   At the time of renewal, Ms. English on behalf of Serendipity signed a filled out and signed a renewal application and hurricane plan, which were material to Underwriters

renewal of the subject policy of insurance.

From inception in 2015, through the date of loss on September 1, 2019, the subject policy of insurance contained a Captain Warranty (FT Lic. M&C) which was endorsed and thereby amended the subject policy of insurance. The Capt. Warranty (FT Lic. M&C) states: "Warrantied a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway." Underwriters have proven, as a matter of law, that Serendipity was in breach of the Captain Warranty at the time the vessel was damaged by Hurricane Dorian and had been in breach of the Captain Warranty since 2015. Although it received substantial premium discounts, on the order of 20% per year, Serendipity never hired the full time licensed captain it had warrantied under the policy. In fact, it affirmatively misrepresented that it had hired the required captain by providing the resume of a retired captain, Scott Connelly for underwriters approval. This finding of breach of the Captain Warranty by the Trial Court was upheld on appeal. One of the central issues remaining for bench trial of this case is whether Serendipity's breach of the Captain Warranty increased the hazard to M/Y Serendipity posed by Hurricane Dorian, by any means within control of the insured. Underwriters will prove that the breach of the Captain Warranty certainly increased the hazard posed to the vessel as M/Y Serendipity was left behind a private residence in Treasure Cay, Bahamas, which was in the long forecast path of Hurricane Dorian. With its beneficial owners in Florida and no full time licensed captain employed for the maintenance and care of the vessel, there was no approved Captain available to evacuate the vessel from the Bahamas back to the safety of its primary mooring location and the location set forth in its hurricane plan. In the face of the forecast tropical storm and then Hurricane Dorian, the only reasonable and prudent course of action was to evacuate the vessel back to Florida, which would have prevented the substantial damage it

sustained.

Underwriters will advance the expert testimony of Austin Dooley, Ph.D. of Dooley SeaWeather Analysis and Captain Thomas Danti of METCON, LLC to explain how a full time licensed captain employed for the maintenance and care of M/Y Serendipity would have planned for a hurricane evacuation and executed that plan when triggered by the approach of Dorian. Serendipity, having no such plan, nor a full time licensed captain to execute it doomed the vessel to destruction by attempting to have local Bahamians tie it up behind a residence. In doing so, Serendipity also breached its approved 2019 Hurricane Plan, which is another independent basis for this Court to deny Plaintiff's breach of contract claim. Underwriters are confident that the Court will find that Plaintiff breached the contract of insurance, that the breaches increased the hazard to the vessel and that Serendipity should recover nothing from its Underwriters.

**(2)** **The basis of federal jurisdiction.**

The Court has jurisdiction in this case as there is complete diversity of citizenship between the Plaintiff and the Defendant. Jurisdiction exists under 28 U.S.C. § 1332(a)(1).

**(3)** **The pleadings raising the issues.**

Plaintiffs' Fourth Amended Complaint [DE 65], and Defendant's Answer and Defenses thereto [DE 71]. The Mandate and Opinion of the Eleventh Circuit [DE 173].

**(4)** **A list of undisposed motions or other matters requiring action by the Court.**

Defendant's Motion to Strike Plaintiff's Out of Time Rule 26 Disclosures, not yet filed.

**(5)** **A concise statement of uncontested facts which will require no proof at trial, with reservations, if any:**

a. Serendipity at Sea, LLC ("Serendipity") is a Florida limited liability company

      with its principal address at 11002 Lake Butler Blvd., Windermere, Florida.

b.   Mikael S. Oakley was a Manager of Serendipity at Sea, LLC in 2019.

c.   Jacqueline A. English was a Manager of Serendipity at Sea, LLC in 2019.

d.   Serendipity at Sea, LLC is a single asset holding company formed for ownership of M/Y Serendipity.

e.   To renew the SeaWave Yacht Insurance Policy, Jacqueline English filled out and signed a Renewal Application as an agent of Serendipity on June 9, 2019.

f.   Lloyds issued a policy of insurance 187581 that insured Serendipity's 2004 61 foot vessel on the date of Hurricane Dorian, reserving as to whether this policy was voided by the breach of the Captain Warranty or other breaches of the policy by Serendipity.

g.   The policy period applicable to this loss and litigation was June 10, 2019 through June 10, 2020 ("subject insurance policy").

h.   Under the subject insurance policy, Serendipity was permitted to travel to the Bahamas as it was within the navigation limits of the policy.

i.   The subject insurance policy had a Captain Warranty (FT Lic. M&C) which was endorsed and thereby amended the subject policy of insurance.

j.   The Capt. Warranty (FT Lic. M&C) states: "Warrantied a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway."

k.   Underwriters do not dispute that Michael Sean Oakley was permitted to operate the vessel without the Captain aboard, although this wording was not included in the 2019 Capt. Warranty for the subject insurance policy.

l. Plaintiff qualified for and was provided financial discounts including a reduction in annual premium due to Plaintiff's warrantied employment of a full time, licensed captain.

m. The subject insurance policy had a Crew Warranty which was endorsed and thereby amended the subject policy of insurance.

n. The Crew Warranty states: Coverage is provided for [1] full time paid crew.

o. Serendipity did not employ a full time licensed captain for the maintenance and care of the vessel. As a result, the insurance policy's Captain Warranty was breached by Serendipity.

p. Plaintiff's insurance broker for the subject insurance policy was USI Insurance Services, LLC.

q. The insurance policy had an approved Hurricane Plan executed by Jacqueline English as an agent of Serendipity on June 9, 2019.

r. The approved hurricane plan listed Capt. Scott Connelly as a person with the authority to move and or prepare the vessel for a storm.

s. On or about July 27, 2019, Sean Oakley, along with two friends, took the vessel from Cape Canaveral, Florida to Treasure Key, Abaco Island, Bahamas.

t. The July 27, 2019 voyage from Cape Marina in Cape Canaveral, Florida to Treasure Cay, Bahamas took approximately 10 hours.

u. The vessel docked at Pink Paradise residence in Treasure Cay when it arrived in the Bahamas.

v. Serendipity's plan was to keep M/Y Serendipity in the Bahamas from July 27, 2019 through mid-October.

    w.    Mr. Oakley left Treasure Cay, Bahamas and returned to Florida on or about August 1, 2019.

    x.    Mr. Oakley did not return to Treasure Cay, Bahamas between August 1, 2019 and September 1, 2019, when M/Y Serendipity was damaged by Hurricane Dorian.

    y.    Captain Scott Connelly was never aboard M/Y Serendipity in the Bahamas in 2019.

    z.    The vessel sustained a constructive total loss when hurricane Dorian struck Treasure Cay, Bahamas on September 1, 2019.

**(6) A statement in reasonable detail of the issues of fact that remain to be litigated at trial:**

   a.  **Plaintiff's issues of fact that remain to be litigated at trial**

      i.    Whether Sean Oakley had a licensed Capt. involved in preparing the vessel for the arrival of hurricane Dorian.

      ii.    Whether Trevor Lightbourne and his assistants adequately secured and prepared the vessel for the arrival of hurricane Dorian.

      iii.    Whether in light of all circumstances, the vessel should have returned to Cape Marina in Port Canaveral rather than remain in Treasure Cay.

      iv.    Whether a licensed Capt. would have decided to leave the vessel in the Bahamas to ride out the storm rather than try to return to Cape Canaveral.

      v.    Whether in light of all of the circumstances, including all the weather records, the NOAA tracking reports, the National Hurricane Center forecasts and reports, the local, state and national news reports and TV weather reports and all other hurricane and weather data available at the

  time. A licensed full-time Capt. would have been to stay put and secure the vessel in Treasure Cay?

vi. Whether employing a licensed full-time captain would have changed the decision by Sean Oakley to leave the vessel in Treasure Cay to ride out the storm.

vii. Whether Sean Oakley took reasonable t steps to secure the vessel for Hurricane Dorian.

viii. Whether the Bahamian personnel took at Treasure Cay took reasonable steps to secure the vessel at the Pink Paradise.

ix. Whether Plaintiff's breach of the Capt. Warranty increased the hazard to the vessel by any means within the control of the insured pursuant to Florida Statute § 627.409

**x.** Meteorological details of the tropical depression, tropical storm and hurricane ultimately known as Dorian including all forecasts and tracking information that was available to Serendipity in the lead up to the September 1, 2019 landfall on Abaco Island in the Bahamas to include:

1. When Dorian became a tropical storm
2. When Dorian became a hurricane
3. When did a Hurricane watch go into for the east coast of Florida?
4. When did a Hurricane watch go into effect for the Abacos?
5. When did a Hurricane Warning go into effect for the Abacos?
6. When did as Hurricane Warning go into effect for the east coast of Florida?

       **7.** Forecasts and tracks of Dorian relative to Cape Canaveral, Florida.

       **8.** Forecasts and tracks of Dorian relative to Treasure Cay.

b. **Defendant's issues of fact that remain to be litigated at trial**

    **i.** Whether Plaintiff's breach of the Capt. Warranty (FT Lic. M&C) increased the hazard to the vessel by any means within the control of the insured pursuant to Florida Statute § 627.409 and thereby voided the policy of insurance or constituted a defense to the subject loss.

    **ii.** How Plaintiff's breach the Captain Warranty (FT Lic. M&C) increased the hazard to the vessel by any means within the control of the insured.

    **iii.** Whether Serendipity breached the terms of its approved 2019 Hurricane Plan as the vessel was secured in Treasure Cay, Bahamas for hurricane Dorian, how Plaintiff breached the plan and whether the breach or breaches increased the hazard to the vessel by any means within the control of the insured.

    **iv.** Whether the statements made by Serendipity in the June 9, 2019 renewal application were truthful and accurate as well as material to underwriters accepting the risk or hazard.

    **v.** The financial consideration given to Plaintiff by Underwriters for the employment of a full time licensed captain for the maintenance and care of the vessel.

    **vi.** The effect of failing to submit Captain Connelly's license and qualifications for approval at the time the policy was bound in 2015.

 **vii.** That a vessel in the size range of M/Y Serendipity that is operated, maintained and cared for by its owner presents a higher risk of loss.

 **viii.** Meteorological details of the tropical depression, tropical storm and hurricane ultimately known as Dorian including all forecasts and tracking information that was available to Serendipity in the lead up to the September 1, 2019 landfall on Abaco Island in the Bahamas to include:

1. When Dorian became a tropical storm
2. When Dorian became a hurricane
3. When it was known that Dorian was tracking to the Abacos and the details surrounding those forecasts and warnings.
4. Weather conditions, wind speeds and sea states in the week prior to hurricane Dorian's landfall in the Abacos.
5. Weather conditions, wind speeds and sea states between Treasure Cay in the Bahamas and Cape Canaveral, Florida in the week prior to hurricane Dorian's landfall in the Abacos.
6. The forecast period for preparations in the Abacos prior to the arrival of tropical storm force winds.
7. Weather conditions both forecast and actual for the voyage between Treasure Cay, Bahamas and Cape Canaveral Florida and their comparison to those on July 27, 2019.
8. The weather window for M/Y Serendipity to safely evacuate from the Bahamas to Florida.
9. Forecasts and tracks of Dorian relative to Cape Canaveral, Florida.

      10. Whether Dorian would strike Treasure Cay, Bahamas prior to Cape Canaveral, Florida.

      11. The danger posed to Treasure Cay, Bahamas by Hurricane Dorian.

      12. Whether Hurricane Dorian was predicted to impact the Bahamas and when those predictions were available.

      13. Actual track of Hurricane Dorian and observed/recorded weather conditions during the storm.

      14. The source or sources for the forecasting data above.

      15. The source or sources of weather forecasting data typically used full time captains.

  ix. Findings of AIS data review regarding vessel movements in advance of Hurricane Dorian and whether numerous other vessels evacuated from the Bahamas to Florida in the days prior to Dorian's landfall in the Abacos.

  x. Vessel Specifications for M/Y Serendipity including draft, fuel capacity, cruising speed, range and conditions in which the vessel may be safely operated.

  xi. Time and distance between Treasure Cay, Bahamas to Cape Marina in Cape Canaveral, Florida.

  xii. Whether evacuation of M/Y Serendipity from Treasure Cay to Cape Marina, Cape Canaveral Florida was within the range and of the subject vessel.

  xiii. Experience and training associated with becoming a USCG licensed captain.

    xiv.    Training of USCG licensed captains in the areas of weather and hurricane awareness.

    xv.    With regard to vessel safety, the value of readiness and planning for severe weather events that may be encountered on a voyage.

    xvi.    The content, characteristics and value of a hurricane plan that is prepared and then executed.

    xvii.    Availability of the full time licensed captain to evacuate M/Y Serendipity from the Bahamas in advance of Hurricane Dorian.

    xviii.    Risks posed to M/Y Serendipity being left in Treasure Cay, Bahamas without a dedicated full time Captain.

    xix.    Limitations of using a webcam for hurricane preparation of a vessel.

    xx.    Threat posed to M/Y Serendipity by Hurricane Dorian and the expected response of a full time licensed captain.

    xxi.    Hurricane protection features of Cape Marina in Port Canaveral, Florida versus behind the private residence in Treasure Cay, Bahamas.

    xxii.    Weather window for evacuation of M/Y Serendipity from Treasure Cay, Bahamas.

    xxiii.    Findings of AIS data review regarding vessel movements in advance of Hurricane Dorian and whether vessels evacuated from the Bahamas to Florida in the days prior to Dorian's landfall in the Abacos.

    xxiv.    Other safe ports that M/Y Serendipity may have utilized to evacuate from Hurricane Dorian.

      **xxv.** Serendipity's failure to execute its approved 2019 hurricane plan and how those failures increase the risk of damage to the vessel.

      xxvi. Serendipity had no employed Captain for M/Y Serendipity between June 10, 2019 and September 1, 2019 when the vessel was damaged by Hurricane Dorian.

(7) **A concise statement on issues of law on which there is agreement:**

    a. The Court has jurisdiction in this case; the venue is proper.

    b. Florida law governs the subject policy of insurance.

    c. Plaintiffs must prove their breach of contract claim by a preponderance of the evidence; Defendant must prove its affirmative defenses by the preponderance of the evidence.

    d. Plaintiff breached the Capt. Warranty (FT Lic. M&C) contained within the subject policy of insurance.

**(8) A concise statement on issues of law on which remain for determination by the Court:**

    **a.** Plaintiffs carry the initial burden of making a prima facie showing of considering all facts and circumstances known at the time to Sean Oakley, Scott Connelly, Trevor Lightbourne, they made a reasonable decision that leaving the vessel in Treasure Cay to ride out hurricane Dorian would not increase the risk of damage to the vessel.

    **b.** Whether Plaintiff's breach of the Capt. Warranty (FT Lic. M&C) increased the hazard to the vessel by any means within the control of the insured pursuant to Florida Statute § 627.409 and thereby voided the policy of insurance or

    constituted a defense to the subject loss.

  c. Whether Plaintiff's breach of the approved 2019 Hurricane Plan increased the hazard to the vessel by any means within the control of the insured pursuant to Florida Statute § 627.409 and thereby voided the policy of insurance or constituted a defense to the subject loss.

  d. Whether the statements made by Serendipity in the June 9, 2019 renewal were truthful, accurate as well as material to underwriters accepting the risk or hazard. If misrepresentations in this application void the subject policy of insurance from inception.

  e. Whether the damage to M/Y Serendipity during Hurricane Dorian was a fortuitous loss.

  f. Underwriters entitlement to an attorney fee award.

**(9) Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including the basis of all objections to each exhibit will be provided pursuant to the schedule set forth in the Trial Order [ECF No. 178, 197].**

**(10) Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to be present and those whom the party expects to call if the need arises will be provided pursuant to the schedule set forth in the Trial Order [ECF No. 178, 197].**

(11) **Estimated Trial Time**

Plaintiff's estimate is a 3-4 day nonjury trial.

Defendant's estimate is a 2-3 day nonjury trial.

**(12) Estimate of each party as to the maximum amount of attorney's fees properly allowable to a prevailing party.**

 a. **Plaintiff's Estimate as to Attorney's Fees**

Plaintiffs claim entitlement to fees pursuant to Fla. Stat. § 627.428, as the prevailing insured in a coverage dispute with its insurer. These fees would be for litigating the instant case, the appeal that followed and the trial after remand,

The appropriate amount of fees properly allowable are those that the Court finds reasonable under the circumstances, and, generally speaking, would amount to the number of hours reasonably expended in this matter, multiplied by the reasonable hourly rate of the attorney, paralegal, or legal assistant performing such services. Testimony and records will need to be obtained from prior counsel Ron Anania and Susan Jorgensen, as well as undersigned. This should be done post-trial if necessary and with a referral to a magistrate.

    b. **Defendant's Estimate as to Attorney's Fees**

Defendant served a Proposal for Settlement pursuant to Chapter 768.79 of the Florida Statutes on March 6, 2023 [ECF No. 185], which was not accepted by the Plaintiff. If the Defendant prevails at trial or otherwise triggers the proposal, than the defendant shall be entitled to recover reasonable costs and attorney's fees incurred from the date of filing the offer. Defendant's estimate at this time $30,000.00 to $40,000.00 depending on the length of trial and other factors.

Defendant served various requests for admissions to Plaintiff during discovery in this case. If Defendant proves the matter sought by certain admissions to be true at trial and these were denied by the Plaintiff, the Defendant may move post trial for the Plaintiff to pay the reasonable expenses, including attorney's fees, incurred in making the proof as provided for in Federal Rule of Civil Procedure 37(c)(2). The Defendant does not have an estimate of the attorney's fees associated with a failure to admit at this time. This would necessarily depend on the factual findings at trial and which admissions were denied by the Plaintiff in discovery.

Respectfully submitted,

| | |
|---|---|
| ADER & HITT, P.A. | /s Andrew N. Mescolotto |
| Counsel for Plaintiff | ANDREW N. MESCOLOTTO (28141) |
| 3401 North Miami Ave Ste 218 | FERTIG AND GRAMLING |
| Miami, Florida 33127 | 200 Southeast 13th Street |
| Telephone: (305) 371-6060 | Fort Lauderdale, FL 33316 |
| s/    Robert Ader | PH:    (954) 763-5020 |
| ROBERT A. ADER | FX:    (954) 763-5412 |
| Florida Bar No. 335126 | anm@fertig.com |
| ELIZABETH B. HITT | Attorneys for Underwriters |
| Florida Bar No. 176850 | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on May 8, 2023 on all counsel or parties of record on the Service List below   This filing was made jointly on behalf of the parties by the undersigned with the consent of Serendipity's attorney.

Respectfully Submitted,

By:    /s Andrew N. Mescolotto
ANDREW N. MESCOLOTTO (28141)
FERTIG AND GRAMLING
Attorneys for the Underwriters

## SERVICE LIST

| | |
|---|---|
| ROBERT ADER (335126)<br>rader@aderhittlaw.com<br>ELIZABETH HITT (176850)<br>ehitt@aderhittlaw.com<br>ADER & HITT, PA<br>Midtown Office Lofts – Suite 218<br>3401 North Miami Avenue<br>Miami, Florida 33127<br>Telephone: (305) 371-6060<br>*Attorney for Plaintiff*<br>*Via CM/ECF* | ANDREW N. MESCOLOTTO (28141)<br>FERTIG AND GRAMLING<br>200 Southeast 13th Street<br>Fort Lauderdale, FL 33316<br>PH:    (954) 763-5020<br>FX:    (954) 763-5412<br>anm@fertig.com<br>*Attorneys for Underwriters*<br>*VIA CM/ECF* |

|  |  |
|---|---|
| Susan Z. Jorgensen (1022692)<br>Law Offices of Susan Z. Jorgensen, P.A.<br>2598 E Sunrise Blvd., Ste. 2104<br>Ft. Lauderdale, FL  33301<br>PH:  (202) 329-0098<br>Susan@SusanJorgensenLaw.com<br>*Co-Counsel for Plaintiff*<br>*Via CM/ECF* |  |